UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

EILIONORA E. DONELSON, JILL M. YOUNG,
VIVIAN I. FIRSTENBERGER, SHERYL TARRY,
VICTORIA BICE, and CHAD BICE, individually,
and as representatives of a Class of Participants and
Beneficiaries of the Meijer 401(k) Retirement Plan I
and the Meijer 401(k) Retirement Plan II,

        Plaintiffs,                               Case No: 1:25-cv-1167

        v.

MEIJER, INC.; and the BOARD OF DIRECTORS
OF MEIJER, INC.,

        Defendants.

## COMPLAINT

    Plaintiffs Eilionora E. Donelson, Jill M. Young, Vivian I. Firstenberger, Sheryl Tarry, Victoria Bice, and Chad Bice ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of the Meijer 401(k) Retirement Plan I and Meijer 401(k) Retirement Plan II (the "Meijer 401(k) Plans" or "Plans"), by their counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendants, alleges and asserts to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

### INTRODUCTION

    1.    The Employee Retirement Income Security Act ("ERISA") requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and

to refrain from "deal[ing] with the assets of the plan" in its own interest. 29 U.S.C. §§ 1104(a)(1), 1106(a)(1)(D), 1106(b)(1).

2.      Plaintiffs brings this ERISA action on behalf of the Meijer Plans under 29 U.S.C. § 1132(a)(2) and Rule 23 of the Federal Rules of Civil Procedure as representatives of a class of participants and beneficiaries of the Plans, against Defendants Meijer, Inc. ("Meijer"), and the Board of Directors of Meijer, Inc. ("Board") (collectively "Defendants"), for breaching their fiduciary duties and engaging in prohibited transactions with regard to the Meijer 401(k) Plans.

3.      This Complaint alleges ERISA fiduciary breach claims based on breaches of loyalty, prudence, monitoring, and for party-in-interest and fiduciary prohibited transactions, based on Defendants' misallocating Plan forfeitures for their own benefit under the Meijer 401(k) Plans.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

5.      This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

6.      Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District.

## PARTIES

7.      Plaintiff Eilionora E. Donelson is a resident of the State of Michigan, and during the Class Period was a participant in the Meijer 401(k) Retirement Plan I under ERISA § 3(7), 29 U.S.C. § 1002(7).

8. Plaintiff Jill M. Young is a resident of the State of Wisconsin, and during the Class Period was a participant in the Meijer 401(k) Retirement Plan I under ERISA § 3(7), 29 U.S.C. § 1002(7).

9. Vivian I. Firstenberger is a resident of the State of Ohio, and during the Class Period was a participant in the Meijer 401(k) Retirement Plan II under ERISA § 3(7), 29 U.S.C. § 1002(7).

10. Sheryl Tarry is a resident of the State of Michigan, and during the Class Period was a participant in the Meijer 401(k) Retirement Plan II under ERISA § 3(7), 29 U.S.C. § 1002(7).

11. Victoria Bice is a resident of the State of Michigan, and during the Class Period was a participant in the Meijer 401(k) Retirement Plan I under ERISA § 3(7), 29 U.S.C. § 1002(7).

12. Chad Bice is a resident of the State of Michigan, and during the Class Period was a participant in the Meijer 401(k) Retirement Plan I under ERISA § 3(7), 29 U.S.C. § 1002(7).

13. Plaintiffs have Article III standing to bring this action on behalf of both the Meijer 401(k) Retirement Plan I and the Meijer 401(k) Retirement Plan II because they suffered actual injuries through the misallocation of Plan forfeitures by Defendants with regard to the Meijer 401(k) Plans during the Class Period. Those injuries are fairly traceable to Defendants' unlawful conduct in using Plan forfeitures for their own benefit, and those harms are likely to be redressed by a favorable judgment providing appropriate equitable relief to the Plaintiffs and to the Class.

14. Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), on behalf of the Meijer 401(k) Plans and for relief that sweeps beyond their own injuries.

15. The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misallocation of Plan forfeitures) necessary to understand

that Defendants breached their fiduciary duties and engaged in prohibited transactions until shortly before this suit was filed.

16.     Having never managed very large 401(k) Plans, Plaintiffs, and all participants in the Plans, lacked actual knowledge of how Plan forfeitures should be allocated.

17.     Meijer, Inc. ("Meijer") is a privately owned retailer of the one-stop shopping concept, with over 500 stores and 70,000+ employees across the country. On both of Plans' 2023 5500 forms, Meijer lists its address as P.O. Box 2281, Grand Rapids, MI 49501. Meijer has at least a dozen stores in the State of Wisconsin and about 3,000 Wisconsin employees. In this Complaint, "Meijer" refers to the named Defendants and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain.

18.     Meijer acted through its officers, including its Board of Directors, to perform Plan-related fiduciary functions in the course and scope of their business. Meijer and its Board appointed other Plan fiduciaries to the Meijer 401(k) Plans, and accordingly had a concomitant fiduciary duty to monitor and supervise those appointees.  For these reasons, Meijer and its Board are fiduciaries of the Meijer 401(k) Plans, within the meaning of 29 U.S.C. § 1002(21)(A).

19.     The Meijer 401(k) Plans are also administered by the company itself according to the summary plan descriptions ("SPDs") for the Meijer 401(k) Plans. The address for Plan Administrator is listed as Meijer Rewards Service Center, P.O. Box 1590, Lincolnshire, IL 60069. Meijer is therefore also the fiduciary with day-to-day administration and operation of their respective Plans under 29 U.S.C. § 1002(21)(A). Meijer have authority and responsibility for the control, management, and administration of their respective Plan in accord with 29 U.S.C. § 1102(a), with all powers necessary to properly carry out such responsibilities.

## ERISA FIDICIARY AND PROHIBITED TRANSACTION STANDARDS

20.     ERISA exists, in large part, to protect the interests of participants, and their bene-

ficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)

(citing 29 U.S.C. § 1001(b)).

21.     "[A]ny person who exercises discretionary authority or control in the management

or administration of an ERISA plan" is, under the statute's terms, a fiduciary. *See Barchock v. CVS

Health Corp.,* 886 F.3d 43, 44 (1st Cir. 2018) (citing 29 U.S.C. § 1002(21)(A)).

22.     ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement

plans, like the Pearson Plan, that are covered by ERISA.

23.     ERISA provides that  "a fiduciary shall discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i)

providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of

administering the plan; [and] (B) with the care, skill, prudence and diligence under the circum-

stances then prevailing that a prudent man acting in like capacity and familiar with such matters

would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29

U.S.C. § 1104(a)(1)(A), (B).

24.     These fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*,

680 F.2d 263, 272 n.8 (2d Cir. 1982).

25.     The continuing duty to monitor is a subset of the duty of prudence, *Tibble v. Edison

Int'l*, 575 U.S. 523, 529–30 (2015), and requires a plan fiduciary to "incur only costs that are

reasonable in amount and appropriate to the investment responsibilities of the trusteeship." *See

Hughes v. Northwestern University*, 63 F.4th 615, 626 (7th Cir. 2023) ("*Hughes II*") (quoting RE-

STATEMENT (THIRD) OF TRUSTS § 90(c)(3)).

26. Defendants are ERISA fiduciaries as they exercise discretionary oversight, authority, or control over the Meijer 401(k) Plans that it sponsors and administers for the benefit of its employees.

27. Defendants failed to fulfill their duty to prudently control the manner in which forfeitures were utilized by the Plan.

28. Meijer is also a party-in-interest because it is an employer "any of whose employees are covered by such plan." *Id.*, § 1002(14)(C).

29. Because Defendants are fiduciaries of the Plan and "deal[t] with the assets of the plan in [their] own interest or for [their] own account," they violated the fiduciary duty of loyalty and engaged in prohibited transactions under both 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b)(1), by benefiting themselves as far as reducing their own future contributions to the Meijer 401(k) Plans and making it unnecessary to take money out of their general revenues to support the Plans.

## MISALLOCATION OF PLAN FORFEITURES

30. The fiduciary duties of prudence, loyalty, as well as the duties to refrain from benefitting the company and self-dealing, under ERISA, are violated where, as here, the employer (1) is both the plan sponsor and plan administrator, (2) is faced with a conflict of interest in choosing between allocating plan assets toward offsetting its own contributions to the plan or defraying plan expenses that would otherwise be borne by plan participants, (3) fails to conduct any investigation as to which choice would be in the best interest of the participants, (4) acts contrary to the express provisions of the Plan, and (5) decides to allocate a portion of those plan assets toward reducing its own plan contributions because that choice best serves its own interests.

31.     Plaintiffs are all "participants" in defined-contribution plans under ERISA Section 3(7), 29 U.S.C. § 1002(7): either the Meijer 401(k) Retirement Plan I (for non-union workers) or the Meijer 401(k) Retirement Plan II (for union workers).

32.     As an individual account, defined contribution retirement plan, the Meijer 401(k) Plans provide for individual accounts "for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and loss, and forfeiture of accounts of other participations which may be allocated to such participant's account." 29 U.S.C § 1002(34).

33.     In accordance with 29 U.S.C. § 1103(a), the assets of the Meijer 401(k) Plans are held in a trust fund.

34.     The Plans are funded by a combination of wage withholdings by Plan participants and Company matching contributions, each of which is deposited into the Plans' trust funds.

35.     Each participant's account is credited with the participant's (1) Salary Deferral Contributions; (2) Roth 401(k) Account; (3) Base Company Contributions; (4) Rollover Contributions; (5) Roth Rollover Contributions; (6) Qualified Nonelective Employer Contribution Account; and (7) Qualified Matching Contribution Account; (8) Plan earnings; and (9) forfeitures of terminated participants' non-vested accounts.

36.     Participants in the Meijer 401(k) Plan are fully vested at all times with regard to their own contributions and earnings thereon.

37.     Under Section 4.4 of both the Meijer 401(k) Retirement Plan I (Restated January 1, 2017) ("Plan I") and the Meijer 401(k) Retirement Plan II (Restated January 1, 2017) ("Plan II"), "[t]he amount of the Matching Company Contribution for a Nongrandfathered Participant who is subject to this subsection will be 50% of the Nongrandfathered Participant's Salary Deferral

7

Contributions for the pay period. However, no Matching Company Contribution will be made for the Nongrandfathered Participant's Salary Deferral Contributions which exceed 5% of the Nongrandfathered Participant's Compensation during the pay period. As a result, the maximum Matching Company Contribution for a pay period is 2½% of the Nongrandfathered Participant's Compensation during that pay period."

38.     Upon their deposit into the Plans' trust funds, all participant contributions and Company contributions become assets of the Plan.

39.     Participants are subject to a five-year gradual vesting schedule with regard to Company Matching Contributions and earnings thereon, after which time they become 100% vested in the Company matching contributions and earnings thereon. Plan I and Plan II, Section 9.1.

40.     Participant accounts are charged with an allocation of administrative expenses. The Plans' Trust Fund may be used to defray the reasonable expenses of administering the Plan and Trust Fund. *See* Plan I and Plan II, Section 4.7.

41.     Under Section 7.5 of Plan I and Plan II, "[f]orfeitures will be reallocated or used as provided in Article 9."

42.     In turn, under Section 9.3 of Plan I and Plan II, "[s]ubject to Section 9.4, *all Forfeitures under the terms of the Plan will be used as soon as administratively feasible to reduce Employer contributions (other than Salary Deferral Contributions) or pay reasonable administrative expenses of the Plan* . . . . Forfeitures will be deemed to be Employer contributions upon their use to reduce Employer contributions." (emphasis added). Section 9.4 concerns restoration of forfeitures upon rehiring.

43.     The use of the word "or" imbues this Plan language with discretion. So, when the time came to actually exercise the discretion provided by the Plan, to determine whether forfeitures

would be allocated toward Plan administrative expenses or toward reducing Meijer's matching contributions, those decisions were made in a fiduciary capacity.

44.　　Section 13.3 of Plan I and Plan II states: "The Trust Fund must be used for the exclusive benefit of the Participants, to pay the benefits provided by the Plan and to defray the reasonable expenses of administering the Plan.  All benefits under the Plan will be paid from the Trust Fund.  The Trust Agreement will provide that the reasonable expenses and fees of Trustee and any Investment Manager will be paid from the Trust Fund unless paid directly by Employer."

45.　　Meijer must allocate all of the Plans' forfeitures "no later than the end of the Plan Year immediately following the Plan Year in which the Forfeiture occurred." Plan I and Plan II, Section 9.3. Accordingly, on December 31st of each year, the matching contributions that have accrued throughout the prior calendar year become outstanding and unpaid amounts owing to the Plan.

46.　　Unless Defendants choose to allocate the forfeitures to "pay reasonable administrative expenses of the Plan," the Plans' administrative expenses are charged to the participants' accounts.

47.　　During the Class Period alleged herein, each participant's account has been charged, among other things, a fixed amount of at least $36 per year for the Plans' administrative services provided by the Plan recordkeeper, Alight.

48.　　The deduction of the Plans' administrative expenses from the participants' accounts reduces the funds available to participants for distribution and/or investing, and deprives the Plans of funds that otherwise would have been earned on the amounts deducted.

49.     After providing discretion to the Plan administrator to decide how to allocate for-feitures from the beginning of the Class Period, on January 31, 2025, Plan I and Plan II were amended by the 2025-1 Amendment.

50.     In pertinent part, 2025-1 amends "[t]he last paragraph of Section 9.3" to now state that "[t]he Forfeitures will be determined at least once each Plan Year.  Subject to Section 9.4, *all Forfeitures under the terms of the Plan will be used first to reduce Employer contributions (other than Salary Deferral Contributions) and then to pay reasonable administrative expenses of the Plan.*  The Forfeitures must be used no later than the end of the Plan Year immediately following the Plan Year in which the Forfeiture occurred.  Forfeitures will be deemed to be Employer con-tributions upon their use to reduce Employer contributions." (emphasis added).

51.     Amendment 2025-1 thus makes clear that although as of January 31, 2025, the Plans' Administrator is permitted to prioritize employer contributions over paying reasonable ad-ministrative expenses, prior to that time going back to the start of the Class Period on August 6, 2019, the Plans' Administrator had a discretionary choice whether to use the Plans' forfeitures to pay reasonable administrative expenses *or* pay employer contributions.

52.     The Plans' Administrators have used that discretion exclusively to favor the com-pany every single time between August 6, 2019 and January 30, 2025, by paying employer contri-butions rather paying reasonable administrative expenses, even though they had the discretionary choice to favor the Plans participants by paying reasonable administrative expenses which partic-ipants instead had to pay.

53.     The Audited Financials to both Plan I and Plan II 5500 forms have identical lan-guage from 2019-2023.  Audited Financial Statement footnotes (attached to Plan 5500 Forms) also provide current forfeiture year-end balance and previous year end balance for both Plans.

54.     The Audited Financials to the Plan I 5500 Forms from 2019 states: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or pay plan expenses.* The balance in the forfeiture account at December 31, 2019 and 2018 was $1,324,062 and $1,025,523, respectively. During the years ended December 31, 2019 and 2018, forfeitures of $1,531,956 and $841,038, respectively, were used to reduce employer contributions." (emphasis added).

55.     The Audited Financials to the Plan I 5500 Forms from 2020 state: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or pay plan expenses.* The balance in the forfeiture account at December 31, 2019 and 2018 was $1,324,062 and $1,025,523, respectively. During the years ended December 31, 2019 and 2018, forfeitures of $1,531,956 and $841,038, respectively, were used to reduce employer contributions." (emphasis added).

56.     The Audited Financials to the Plan I 5500 Forms from 2021 state: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or pay plan expenses.* The balance in the forfeiture account at December 31, 2021 and 2020 was $837,086 and $646,329, respectively. During the years ended December 31, 2021 and 2020, forfeitures of $1,159,776 and $951,737, respectively, were used to reduce employer contributions." (emphasis added).

57.     The Audited Financials to the Plan I 5500 Forms from 2022 state: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or pay plan expenses.* The balance in the forfeiture account at December 31, 2022 and 2021 was $1,243,695, and $837,086, respectively. During the years ended December 31, 2022 and 2021,

forfeitures of $837,086 and $1,159,776, respectively, were used to reduce employer contributions." (emphasis added).

58.     The Audited Financials to the Plan I 5500 Forms from 2023 state: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or pay plan expenses*. The balance in the forfeiture account at December 31, 2023 and 2022 was $1,147,947, and $1,243,695, respectively. During the years ended December 31, 2023 and 2022, forfeitures of $1,242,025 and $837,086, respectively, were used to reduce employer contributions." (emphasis added).

59.     The Audited Financials to the Plan II 5500 Forms from 2019 state: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or to pay plan expenses*. The balance in the forfeiture account at December 31, 2019 and 2018 was $454,843 and $479,908 respectively. During the years ended December 31, 2019 and 2018, forfeitures of $479,287 and $178,287, respectively, were used to reduce employer contributions." (emphasis added).

60.     The Audited Financials to the Plan II 5500 Forms from 2020 state: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or to pay plan expenses*. The balance in the forfeiture account at December 31, 2020 and 2019 was $538,454 and $454,843 respectively. During the years ended December 31, 2020 and 2019, forfeitures of $633,220 and $479,287, respectively, were used to reduce employer contributions." (emphasis added).

61.     The Audited Financials to the Plan II 5500 Forms from 2021 state: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or to pay plan expenses*. The balance in the forfeiture account at December 31, 2021 and

2020was $1,072,888 and $538,454 respectively. During the years ended December 31, 2021 and 2020, forfeitures of $586,784 and $633,220, respectively, were used to reduce employer contributions." (emphasis added).

62.     The Audited Financials to the Plan II 5500 Forms from 2022 state: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or to pay plan expenses*. The balance in the forfeiture account at December 31, 2022 and 2021 was $927,992 and $1,072,888 respectively. During the years ended December 31, 2022 and 2021, forfeitures of $1,072,888 and $586,784, respectively, were used to reduce employer contributions." (emphasis added).

63.     The Audited Financials to the Plan II 5500 Forms from 2023 state: "*Forfeited balances of terminated participants' nonvested accounts are used to offset future employer contributions or to pay plan expenses*. The balance in the forfeiture account at December 31, 2023 and 2022was $852,599 and $927,992 respectively. During the years ended December 31, 2023 and 2022, forfeitures of$927,003 and $1,072,888, respectively, were used to reduce employer contributions." (emphasis added).

64.     The identical language in Pan I and Plan II's Audited Financials makes clear that the Plans' Administrators had fiduciary discretion to use the Plans' forfeited funds for employer contributions or to pay the Plans' administrative expenses, but used Plans' forfeitures in a discretionary matter only to pay for employer matching contributions. The Plans' Administrators from 2019-2023 did not use that money to reduce Plans' administrative expenses, which would have benefitted the Plans' participants rather than Meijer.

65.     The following chart shows Plan I's use of forfeiture allocations:

**Preliminary Forfeiture Claim Analysis for Meijer 401K Retirement Plan I**

| Plan Demographics | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| Participants | 27,732 | 29,023 | 29,328 | 29,739 | 31,751 | |
| Assets | $957,348,224 | $1,139,810,299 | $1,336,839,249 | $1,158,983,530 | $1,388,353,826 | |
| Average Account Balance | $34,521 | $39,273 | $45,582 | $38,972 | $43,726 | |
| Termed Participants < 100% Vested | 3,287 | 2,754 | 3,950 | 3,729 | 3,392 | |

66.     The following chart shows Plan I's use of forfeiture allocations:

**Preliminary Forfeiture Claim Analysis for Meijer 401K Retirement Plan Ii**

| Plan Demographics | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| Participants | 25,036 | 25,954 | 26,715 | 26,834 | 27,858 | |
| Assets | $362,450,247 | $438,610,716 | $528,861,659 | $466,252,476 | $554,165,668 | |
| Average Account Balance | $14,477 | $16,900 | $19,796 | $17,375 | $19,893 | |
| Termed Participants < 100% Vested | 2,609 | 2,590 | 3,138 | 3,048 | 2,862 | |

67.     The following chart shows Plan I and Plan II's combined use of forfeiture allocations:

**Preliminary Forfeiture Claim Analysis for Meijer - Combined Plans**

| Plan Demographics | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| Participants | 27,732 | 29,023 | 29,328 | 29,739 | 31,751 | |
| Assets | $957,348,224 | $1,139,810,299 | $1,336,839,249 | $1,158,983,530 | $1,388,353,826 | |
| Average Account Balance | $34,521 | $39,273 | $45,582 | $38,972 | $43,726 | |
| Termed Participants < 100% Vested | 5,896 | 5,344 | 7,088 | 6,777 | 6,254 | |

68.     Using the forfeitures to "offset future employer contributions" is usually in the best interest of Meijer because that option decreases Meijer's own contribution costs and means that Meijer does not need to take money out of its own general revenues to pay for its Plans' contributions.

69.     The option to offset future employer contributions may be in the best interests of participants where there is a risk that Meijer may be financially unable to satisfy its matching or discretionary contribution obligations.

70.     Absent a risk that Meijer would be unable to satisfy its contribution obligations under the Meijer 401(k) Plans, however, using forfeitures to "pay plan expenses" would be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such administrative expenses.

71.     In deciding between using the forfeiture to benefit Meijer or using the forfeitures to benefit the participants, Defendants are presented with a conflict of interest in administering the Plans and managing and disposing of their assets.

72.     Despite the conflict of interest presented by this decision, Defendants failed to undertake any investigation into which option was in the best interest of the Plans' participants and beneficiaries.

73.     Defendants did not, for example, investigate whether there was a risk that Meijer would default on its matching or discretionary contribution obligations if forfeitures were used to pay Plans' administrative expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plans' administrative expenses charged to participants and still offset a portion of Meijer's own contribution obligations, as a prudent person would have done.

74.     Defendants also failed to consult with an independent non-conflicted decisionmaker to advise them in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done.

75.     Although ERISA requires Defendants to defray the Plan's expenses, see 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Meijer 401(k) Plans permitted Defendants to use the forfeited funds to pay reasonable administrative expenses rather pay company contributions through at least January 30, 2025, throughout the Class Period Defendants consistently and reflexively declined to use forfeited funds for to pay administrative expenses, instead using the Plans' forfeitures to reduce the amount of money it had to take out of its general revenues and corporate treasuries to support the maintenance of the Meijer 401(k) Plans.

76.     For each year between 2019 and 2024, Meijer was under no risk of defaulting on its contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently based the decision of how to allocate forfeitures solely on their own self-interest and failed to consider the interests of the Plan and its participants.

77.     While Defendants' decisions to use the Plans' forfeitures to reduce its outstanding and unpaid contributions benefitted the Company by lowering its costs, it harmed the Plans, along with its participants and beneficiaries, by reducing the amount of assets the Plans otherwise would have received and by causing deductions from participants' accounts to cover expenses that otherwise would have been covered in whole or in part by Plans' forfeitures.

78.     Defendants misallocation of the Plans' forfeitures can be divided into two separate breach of fiduciary violations: (1) inappropriately utilizing forfeitures to offset employer matching contributions instead of paying the Plans' administrative expenses; and (2) not exhausting forfeiture balances by year-end.

### Meijer's Disloyal Use Of Plan Forfeitures

79.     ERISA explicitly requires plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

80.     Furthermore, in deciding to use Plans' forfeitures to benefit itself as far as reducing company matching contributions through use of Plans' assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates both the ERISA party-in-interest and fiduciary prohibited transaction rules under 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b).

81. IRS guidance regarding the reduction of employer contributions through use of plan forfeitures either do not speak to prohibited transactions, have been superseded by more recent guidance, only exist in the form of proposed regulations, and/or do not apply to private actions based on Department of Labor fiduciary duties but only to IRS audits.

82. ERISA also provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

83. Despite the conflict of interest presented by the decision to use Meijer 401(k) Plans' forfeitures for Meijer's own benefit, Defendants failed to undertake any prudent investigation into which option the most prudent action to take.

84. Defendants did not, for example, investigate whether there was a risk that Meijer would default on its Plans' contributions if forfeitures were used to pay Plans' administrative expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plans' administrative expenses charged to participants and still offset a portion of Meijer's own contribution obligations, as a prudent person would have done.

85. Defendants also failed to consult with independent non-conflicted decisionmakers to advise them in deciding upon the best course of action for allocating the forfeitures in the Plans, as a prudent person would have done.

86. Instead, Defendants have consistently and reflexively chosen to use the forfeitures for their own interest, to the detriment of the Plans and their participants, by allocating all forfeitures toward reducing Meijer's matching contributions owing to the Plans.

87.     For each year between 2019 and 2024, Meijer was under no risk of defaulting on its contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently based the decision of how to allocate forfeitures solely on their own self-interest and failed to consider the interests of the Plans and their participants.

88.     At the very least, Defendants should have used the fiduciary discretion granted to it prior to January 30, 2025, to pay Plan administration expenses first. Defendants' fiduciary decision with regard to the Meijer 401(k) Plans cost the Plans' participants over $12.5 million dollars from 2019 through 2024 ($7.675 million for Plan I, and $4.844 million for Plan II):

**Forfeitures Not Used to Pay Plan Expenses** *(Disloyal Discretion)*

|  | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| **Minimum Forfeitures Available to offset Plan Expenses** (Only Direct Compensation) | $1,531,956 | $951,737 | $1,159,776 | $837,086 | $1,242,025 | $0 |
| **Total Direct Compensation** | $1,711,595 | $1,340,919 | $1,504,053 | $1,545,074 | $1,501,707 | $0 |
| **Forfeitures used to pay Plan Expenses** |  |  |  |  |  |  |
| **Potential Losses** | $1,531,956 | $951,737 | $1,159,776 | $837,086 | $1,242,025 | $0 |
| *Compounding Percentage (Plan Return)* |  | 15.32% | 14.53% | -16.12% | 17.06% | 19.59% |
| **Potential Cumulative Compounded Losses** | $1,531,956 | $2,718,442 | $4,273,246 | $4,421,574 | $6,417,941 | $7,675,277 |

**Forfeitures Not Used to Pay Plan Expenses** *(Disloyal Discretion)*

|  | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| **Minimum Forfeitures Available to offset Plan Expenses** (Only Direct Compensation) | $479,287 | $633,220 | $586,784 | $1,072,888 | $927,003 | $0 |
| **Total Direct Compensation** | $1,545,200 | $1,199,126 | $1,370,049 | $1,394,147 | $1,317,582 | $0 |
| **Forfeitures used to pay Plan Expenses** |  |  |  |  |  |  |
| **Potential Losses** | $479,287 | $633,220 | $586,784 | $1,072,888 | $927,003 | $0 |
| *Compounding Percentage (Plan Return)* |  | 15.15% | 14.23% | -16.09% | 16.11% | 19.21% |
| **Potential Cumulative Compounded Losses** | $479,287 | $1,185,122 | $1,940,507 | $2,701,101 | $4,063,225 | $4,843,885 |

**Forfeitures Not Used to Pay Plan Expenses** *(Disloyal Discretion)*

|  | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| **Minimum Forfeitures Available to offset Plan Expenses** (Only Direct Compensation) | $2,011,243 | $1,584,957 | $1,746,560 | $1,909,974 | $2,169,028 | $0 |
| **Total Direct Compensation** | $3,256,795 | $2,540,045 | $2,874,102 | $2,939,221 | $2,819,289 | $0 |
| **Forfeitures used to pay Plan Expenses** |  |  |  |  |  |  |
| **Potential Losses** | $2,011,243 | $1,584,957 | $1,746,560 | $1,909,974 | $2,169,028 | $0 |
| *Compounding Percentage (Plan Return)* |  | 15.32% | 14.53% | -16.12% | 17.06% | 19.59% |
| **Potential Cumulative Compounded Losses** | $2,011,243 | $3,904,393 | $6,218,316 | $7,126,026 | $10,510,791 | $12,569,954 |

89.     While Defendants' reallocation of the forfeitures in the Plans' trust funds to reduce its future matching contributions benefitted Meijer by reducing its own contribution expenses and allowing it not to take additional monies out of its general revenues or corporate treasury, it harmed the Meijer 401(k) Plans, along with its participants and beneficiaries, by reducing future Company contributions that would otherwise have increased Plans' assets and by causing participants to incur deductions of administrative expenses from their individual accounts.

90.     Defendants received a benefit while participants simply received that which they would have received anyway, and remained on the hook for paying their share of the Plans' administrative expenses.

91.     Defendants should have had a fiduciary process in place to determine the best manner to use Plans' forfeitures under their fiduciary duty of prudence. Defendants had no such procedures, or ineffective procedures, in place given the imprudent manner in which Plans' forfeitures were utilized for the Meijer's own benefit.

92.     Furthermore, in deciding to use Plans' forfeiture to benefit itself as far as reducing future company matching contributions through use of the Plans' forfeitures, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such benefiting of the party-interest employer and self-dealing violates both the ERISA party-in-interest and fiduciary prohibited transaction rules under 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b).

93.     By allocating forfeitures toward offsetting employer matching contributions, and saving Meijer millions of dollars in matching Plans' contributions, Defendants benefitted Meijer, a "party in interest," and also dealt with the assets of the Plans in their own interest and for their own account in violation of both party-in-interest and prohibited transaction rules.

94.     Defendants' conduct amounts to a "transaction" between the Plans' Administrators and Meijer itself, insofar as Meijer benefitted from the Plan Administrators' decisions to use the Plans' forfeiture exclusively to reduce Meijer's matching contributions and thus, allowed it to save money by not taking additional funds out of its corporate treasury.

95.     The movement of the Plans' forfeitures is not just within the Meijer Plans, but a movement of funds that leads to Meijer not having to engage in a transaction by which its corporate general revenues are needed to fund it matching contributions to the Meijer Plans.

96.     Allocating forfeitures to reduce employer matching contributions provides a direct financial benefit to a party-in-interest, and therefore is not neutral. It also amounts to fiduciary self-dealing because done by the employer-fiduciary, Meijer, and constitutes a prohibited transaction under both §§ 406(a)(1)(D) and 406(b)(1).

**The Plans' Forfeiture Accounts Should Not Have Had Balances At Year End**

97.     Both the Meijer 401(k) Plans themselves and IRS guidance make clear that the Meijer 401(k) Plans should have allocated  all of the Plans' forfeitures  "no later than the end of the Plan Year immediately following the Plan Year in which the Forfeiture occurred." Plan I and Plan II, Section 9.3.

98.     Accordingly, on December 31st of each year, the matching contributions that have accrued throughout the prior calendar year become outstanding and unpaid amounts owing to the Plan.

99.     In its Retirement News for Employers Newsletter from Spring 2010, the IRS published an article entitled "*Fixing Common Plan Mistakes: Improper Forfeiture Suspense Accounts,*" discussing IRS Publication 4278-B (2010), p4278.pdf (irs.gov).

100. In pertinent part, that article states: "Forfeitures must be used or allocated in the plan year incurred. The Code does not authorize forfeiture suspense accounts to hold unallocated monies beyond the plan year in which they arise."

101. "Revenue Ruling 80-155 states that a defined contribution plan will not be qualified unless all funds are allocated to participants' accounts in accordance with a definite formula defined in the plan. This would preclude a plan from carrying over plan forfeitures to subsequent plan years, as doing so would defy the rule requiring all monies in a defined contribution plan to be allocated annually to plan participants."

102. The same article states that "[t]he plan document's terms should have provisions detailing how and when a plan will exhaust plan forfeitures. A plan's failure to use forfeitures in a timely manner denies plan participants additional benefits or reduced plan expenses."

103. The IRS concludes that "this failure can be corrected by reallocating all forfeitures in the plan's forfeiture suspense account to all plan participants who should have received them had the forfeitures been allocated on time."

104. Consequently, both the Plans' language and IRS guidance make clear that Meijer was required to monitor plan forfeitures and exhaust such forfeitures on a yearly basis. If a suspense account is used, as it was with the Meijer Plans, then Meijer should have ensured that all forfeitures for the Plan years were promptly exhausted by year end or close to year end.

105. Defendants violated their fiduciary duty of prudence by not using their forfeiture suspense account as instructed by the Plans and the IRS, thereby causing Plaintiffs and other of the Plans' members to be denied additional benefits and/or reduced Plan expenses.

106. As shown in the charts below, Plaintiffs seeks $672,931 in losses from 2019-2024 for Plan I and seeks $283,412 in losses from 2019-2024 for Plan II, for a total amount of $972,834,

caused by Defendants' imprudence in failing to exhaust Plan forfeitures in a timely manner at the end of each of the Plans' years.

**Forfeiture End of Year Balances** *(Imprudent & Untimely Use)*

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| Forfeiture Balance EOY | $1,324,062 | $646,329 | $837,086 | $1,243,695 | $1,147,947 | |
| Forfeiture Annual Losses | $0 | $202,893 | $93,921 | -$134,921 | $212,181 | $224,894 |
| *Compounding Percentage (Plan Return)* | | *15.32%* | *14.53%* | *-16.12%* | *17.06%* | *19.59%* |
| Potential Cumulative Compounded Losses | $0 | $202,893 | $326,297 | $138,783 | $374,641 | **$672,931** |
| Sources: | 2019 Form 5500, Page 23 of 36 | 2020 Form 5500, Page 23 of 36 | 2021 Form 5500, Page 24 of 37 | 2022 Form 5500, Page 24 of 36 | 2023 Form 5500, Page 25 of 38 | |

**Forfeiture End of Year Balances** *(Imprudent & Untimely Use)*

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| Forfeiture Balance EOY | $454,843 | $538,454 | $1,072,888 | $927,992 | $852,599 | |
| Forfeiture Annual Losses | $0 | $68,912 | $76,603 | -$172,665 | $149,491 | $163,808 |
| *Compounding Percentage (Plan Return)* | | *15.15%* | *14.23%* | *-16.09%* | *16.11%* | *19.21%* |
| Potential Cumulative Compounded Losses | $0 | $68,912 | $155,319 | -$42,342 | $100,328 | **$283,412** |
| Sources: | 2019 Form 5500, Page 23 of 36 | 2020 Form 5500, Page 23 of 36 | 2021 Form 5500, Page 24 of 37 | 2022 Form 5500, Page 24 of 36 | 2023 Form 5500, Page 25 of 38 | |

**Forfeiture End of Year Balances** *(Imprudent & Untimely Use)*

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| Forfeiture Balance EOY | $1,778,905 | $1,184,783 | $1,909,974 | $2,171,687 | $2,000,546 | |
| Forfeiture Annual Losses | $0 | $272,591 | $172,165 | -$307,848 | $370,501 | $391,926 |
| *Compounding Percentage (Plan Return)* | | *15.32%* | *14.53%* | *-16.12%* | *17.06%* | *19.59%* |
| Potential Cumulative Compounded Losses | $0 | $272,591 | $484,367 | $98,449 | $485,746 | **$972,834** |
| Sources: | 2019 Form 5500, Page 23 of 36 | 2020 Form 5500, Page 23 of 36 | 2021 Form 5500, Page 24 of 37 | 2022 Form 5500, Page 24 of 36 | 2023 Form 5500, Page 25 of 38 | |

## CLASS ACTION ALLEGATIONS

107. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

108. In acting in his representative capacity for the Meijer 401(k) Plans, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Meijer 401(k) Retirement Plan I and Meijer 401(k) Retirement Plan II.

109. Plaintiff seeks to certify, and to be appointed as representative of, the following 401(k) Class:

All participants and beneficiaries of the Meijer 401(k) Retirement Plan I and Meijer 401(k) Retirement Plan II (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning August 6, 2019, and running through the date of judgment.

110. The 401(k) Class includes approximately 32,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

111. There are questions of law and fact common to this 401(k) Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Meijer 401(k) Plans and took the actions and omissions alleged as to the Plans and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

    a.    Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

    b.    Whether Defendants breached their fiduciary duties to the Plan and engaged in prohibited transactions;

    c.    What are the losses to the Plan resulting from each breach of fiduciary duty and prohibited transaction; and

    d.    What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of fiduciary duty and prohibited transactions.

112. Plaintiffs' claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were a participant of the Meijer 401(k) Plans during the time period at issue and all participants in the Plans were harmed by Defendants' misconduct.

113. Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plans during the Class period, have no interests that conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

114. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and

beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

115. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

116. Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

117. The claims brought by the Plaintiffs arise from fiduciary breaches and prohibited transactions as to the Plan in its entirety and do not involve mismanagement of individual accounts.

118. The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the individual participants' Plans.

119. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of Plans for breaches of fiduciary duty or for prohibited transactions.

120. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not, by itself, bind the Plan.

121.    Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plans' Administrators) are the same Plans' Administrators that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a plan administrators' decisions – does not exist here because courts will not defer to plan administrators' legal analysis and interpretation.

**FIRST CLAIM FOR RELIEF**
**Breach of Duty of Loyalty**
**Plaintiffs, on behalf of themselves and Class, Against Defendants**
**(Misallocation of Plans' Forfeitures)**

122.    Plaintiffs restate the above allegations as if fully set forth herein.

123.    Defendants are fiduciaries of the Meijer 401(k) Plans under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

124.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Meijer 401(k) Plans "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

125.    Defendants have continually breached this duty of loyalty with respect to their control and management of the Meijer 401(k) Plans' assets throughout the Class Period by choosing to utilize forfeited funds in the Plan for the exclusive benefit of Meijer rather than solely in the interest of the Plans' participants and beneficiaries..

126.    Instead of acting solely in the interest of the Plans' participants by utilizing forfeited funds in the Plan to reduce or eliminate Plan administrative expenses, Defendants chose to use the Plans' assets for the exclusive purpose of reducing Meijer's matching contributions to the Plans,

thereby saving Meijer tens of millions of dollars at the expense of the Plans and their participants. who were forced to incur avoidable administrative expense deductions to their individual accounts

127.    In making these Plans' forfeiture decisions, Defendants were motivated primarily or exclusively by their own self-interest rather than the interests of the Plans' participants and beneficiaries.

128.    As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plans suffered injury and loss for which they are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

<u>SECOND CLAIM FOR RELIEF</u>
**Breach of Duty of Prudence**
**Plaintiffs, on behalf of themselves and Class, Against Defendants**
<u>**(Misallocation of Plan Forfeitures)**</u>

129.    Plaintiffs restate the above allegations as if fully set forth herein.

130.    Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Meijer 401(k) Plans "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

131.    Defendants have continuously breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the Class Period by declining to use the forfeited funds in the Plans to eliminate or reduce the administrative expenses charged to participant accounts, and instead used the Plans' forfeitures to reduce Meijer' matching contributions to the Plans.

132.    In deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by their forfeitures allocation decisions, Defendants failed to undertake any reasoned and impartial decision-making process to determine

whether using the forfeited funds in the Plans to reduce the Company's own matching contributions, as opposed to the administrative expenses charged to participant accounts, was prudent, and failed to consider whether participants would be better served by another use of these Plans' forfeiture assets after considering all relevant factors.

133.    By refusing to use forfeited funds in the Plans to eliminate or reduce the administrative expenses charged to participant accounts, and instead deciding to use the Plans' forfeiture to reduce Meijer's own matching contributions, Defendants caused the Plans to receive fewer contributions that would otherwise have increased Plans' assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plans' administrative expenses.

134.    Defendants also breached their duty of prudence by failing to follow the Meijer 401(k) Plans themselves and IRS guidance that make clear that the Meijer 401(k) Plans should have allocated all of the Plans' forfeitures "no later than the end of the Plan Year immediately following the Plan Year in which the Forfeiture occurred." Plan I and Plan II, Section 9.3.

135.    On December 31st of each year, the matching contributions that accrued throughout the prior calendar year become outstanding and unpaid amounts owing to the Plan.

136.    Both the Plans' language and IRS guidance make clear that Meijer was required to monitor plan forfeitures and exhaust such forfeitures on a yearly basis. If a suspense account is used, as it was with the Meijer Plans, then Meijer should have ensured that all forfeitures for the Plan years were promptly exhausted by year end or close to year end.

137.    Defendants violated their fiduciary duty of prudence by not using their forfeiture suspense account as instructed by the Plans and the IRS, thereby causing Plaintiffs and other of the Plans' members to be denied additional benefits and/or reduced Plan expenses.

138.    As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plans suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

### THIRD CLAIM FOR RELIEF
**Fiduciary Prohibited Transactions**
**Plaintiffs, on behalf of themselves and Class, Against Defendants)**
**(Self-Dealing with Forfeitures)**

139.    Plaintiffs restate the above allegations as if fully set forth herein.

140.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

141.    Defendants violated this prohibition in its management and control of forfeitures in the Plans. By allocating these Plans' assets toward offsetting Meijer's matching contributions owing to the Plan, thereby saving Meijer millions of dollars in contribution expenses from their own corporate treasury, Defendants dealt with the assets of the Plans in their own interest and for their own account.

142.    Defendants' reallocation of plan assets to reduce its own matching contribution is a 'use' of plan asserts for the purposes of § 1106(a)(1).

143.    As a result of this prohibited conduct, Defendants caused the Plans to suffer losses in the amount of the Plans' assets that were substituted for employer matching contributions and the lost investment returns on those assets.

144.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plans any losses to the Plans resulting from the prohibited conduct alleged in this claim, to restore

to the Plans all assets and profits obtained through the use of Plans assets and is subject to other equitable or remedial relief as appropriate.

## FOUTH CLAIM FOR RELIEF
### Party-In-Interest Prohibited Transactions
### Plaintiffs, on behalf of themselves and Class, Against Defendants
### (Benefitting Employer)

145.  Plaintiffs restate the above allegations as if fully set forth herein.

146.  29 U.S.C. § 1106(a)(1)(D) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect - transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

147.  Defendants, as fiduciaries of the Meijer 401(k) Plans, caused the Plans to engage in a transaction that used the assets of Plan for the benefit of a party in interest, Meijer, by using Plans' forfeitures to reduce the future employer matching contributions of Meijer.

148.  Defendants' reallocation of plan assets to reduce its own matching contribution is "dealing with" plan assets for the purposes of § 1106(b)(1).

149.  By allocating Plan forfeitures to be used for the benefit of reducing future employer contributions, Defendants misused tens of millions of dollars of Plan forfeitures which could have been reallocated instead to Plans' accounts.

150.  Defendant Plan Committee and its members are personally liable under 29 U.S.C. § 1109(a) to make good to the Plans for any losses to the Plans resulting from the prohibited conduct alleged in this claim, to restore to the Plans all assets and profits obtained through the improper use of Plans' assets, and is subject to other equitable or remedial relief as appropriate.

151.  Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plans any losses to the Plans resulting from the prohibited conduct alleged in this claim, to restore to the Plans all assets and profits obtained through the use of Plans' assets and is subject to other equitable or remedial relief as appropriate.

## FIFTH CLAIM FOR RELIEF
### Failure to Adequately Monitor Other Fiduciaries
### Plaintiffs, on behalf of themselves and Class, Against Defendants
### (Misallocation of Forfeitures and Self-Dealing)

152.     Plaintiffs restate the above allegations as if fully set forth herein.

153.     Defendants had the authority to appoint and remove members or individuals responsible for Plans' forfeitures and knew or should have known that these fiduciaries had critical responsibilities for the Plans.

154.     In light of this authority, Defendants had a duty to monitor those individuals responsible for Plans' forfeitures to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Meijer 401(k) Plans in the event that these individuals were not fulfilling those duties.

155.     Defendants had a duty to ensure that the individuals responsible for Plans' forfeitures possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Meijer 401(k) Plans' forfeitures; and reported regularly to Defendants.

156.     The objectively disloyal, imprudent, and conflicted manner in which Defendants handled the Plans' forfeitures inferentially establish that Defendants breached their duty to monitor by, among other things:

> a.     Failing to monitor and evaluate the performance of individuals responsible for the Plans' forfeitures or have a system in place for doing so, standing idly by as the Meijer 401(k) Plans misallocated Plans' forfeiture for Meijer's benefit;
>
> b.     Failing to monitor the process by which individuals responsible for the Plans' forfeitures were evaluated and failing to investigate the proper use of Plans' forfeitures; and

      c.      Failing to remove individuals responsible for Plan forfeitures whose performance was inadequate in that these individuals continued to misallocate Plan forfeitures for the benefit of Meijer.

157.    As the consequences of the breaches of the duty to monitor for the Plans' forfeitures, the Plaintiffs and Plans' participants suffered tens of millions of dollars of objectively unreasonable and unnecessary monetary losses.

158.    Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendants are liable to restore to the Meijer 401(k) Plans all losses caused by their failure to adequately monitor individuals responsible for Plans' forfeitures. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A Declaration the Defendants have breached their fiduciary duties and engaged in prohibited transactions under ERISA;

D.    An Order compelling the Defendants to make good to the Meijer 401(k) Plans all losses to the Plans resulting from Defendants' breaches of fiduciary duty and prohibited transactions, including restoring to the Plans all losses resulting from misallocation of 401(k) Plan forfeitures, and restoring to the Plans all profits the Defendants made through use of the Meijer 401(k) Plans' assets, and restoring to the Plans all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations and not engaged in prohibited transactions;

E.    An Order requiring Meijer to disgorge all profits received from, or in respect of, the Meijer 401(k) Plans, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Meijer as necessary to effectuate relief, and to prevent Meijer's unjust enrichment;

F.      An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties or from engaging in prohibited transactions;

G.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary to administer the Meijer 401(k) Plans and removal of plan fiduciaries deemed to have breached their fiduciary duties or engaged in prohibited transactions;

H.      An award of pre-judgment interest;

I.      An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.      Such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Date: August 6, 2025

**WALCHESKE & LUZI, LLC**

<u>/s Paul M. Secunda</u>
Paul M. Secunda
Wisconsin Bar No. 1074127
235 N. Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and Proposed Class*